In the Matter of the Application of THE EMIGRANT INDUSTRIAL SAVINGS BANK, Petitioner, for an Order against SHELBURN REALTY CORPORATION, Respondent.

Supreme Court, Special Term, New York County, February 6, 1942.

*Joseph H. Praetz*, for the petitioner.

*Joseph J. Einhorn*, for the respondent.

WALTER, J. A mortgagee here moves under section 1077-c of the Civil Practice Act for an order directing the owner of the mortgaged premises to pay over the surplus income produced by the mortgaged premises during the six months ending October 31, 1941. The notice of the motion is dated January 17, 1942, and was served on January 19, 1942, and was returnable on January 30, 1942.

As the application is not for the surplus produced during the six months prior to the application, the court is without power to grant it. (*Matter of Title Guarantee & Trust Co.* v. *Foxvale Realty Corp.*, 287 N. Y. 147, and cases there cited.)

In the case just cited the Court of Appeals, while reiterating previous holdings to that effect, made note of the fact that the mortgagee in that case had been afforded opportunity to examine the records showing receipts and disbursements and indicated as a practical procedure that " the court might require production of evidence showing receipts and disbursements for the subsequent period until the application under section 1077-c was made so that the surplus produced during the statutory period could be computed." Seizing upon that statement, petitioner here asks that the court direct the owner to bring additional records before an official referee in order to ascertain the surplus for the six months' period preceding January 19, 1942, the date when the notice of this application was served.

The problem thus posed, although procedural in nature, is a serious one.

To determine whether or not mortgaged property has produced a surplus over and above all taxes, interest and all other carrying charges during any six months' period obviously takes at least some time, and obviously the process of making the determination cannot be started until after the expiration of the six months, regardless of what six months' period is selected. It is thus apparent that, under the now settled construction of the statute, no application under section 1077-c can be successful unless the application is first made and the determination of the existence of a surplus for the six months preceding its making is then made during the pendency of the application. If that means that upon each and every such application the court must hear the multitudinous details involved in making the determination, of course neither the parties nor the court has any alternative but to accept the burden. Such determinations, however, ordinarily are easily accomplished by an accountant's examination of the owner's books and records, which the statute contemplates shall be made available for inspection by the mortgagee without any application to the court for such inspection (*Matter of Mortgage Commission* v. *Salisch*, 248 App. Div. 739), and before adopting a practice which will convert such examinations by mortgagees' accountants into adversary proceedings before either a judge or referee, official or private, and thus cause them to take on the form of a lawsuit with the delay and expense incident to lawsuits, I think it well to consider whether or not some simpler procedure is still possible.

I think I am justified in saying that, on the whole, there has been reasonable co-operation between owners and mortgagees in getting at the facts respecting the existence of a surplus. Where co-operation has been lacking, a practice has grown up of obtaining an order directing the owner to submit a statement of receipts and disbursements and to make his books available for inspection, and of then making a subsequent application to compel payment of the surplus claimed to have been so ascertained. It is that practice which, under the now settled construction of the statute, enables owners to defeat the application to compel payment by pointing out that the surplus so ascertained is not the surplus for the six months preceding the application for the payment; and it seems to me that a simple variant of the practice will permit an effectuation of the intent of the statute without burdening either the parties or the courts with lengthy and expensive hearings in court.

The dominant relief provided for in section 1077-c is an order directing payment of the surplus. The provision thereof with respect to making books and records available for inspection is incidental to that end. There hence would seem to be no reason why all proceedings under that section should not be instituted by means of a petition and an order to show cause directing the owner to show cause on a certain date why an order should not be made directing such owner to pay such surplus as has been produced by the mortgaged premises during the six months preceding the date of the service of such order to show cause, which is the date of the application (Civ. Prac. Act, § 113, as amd. by Laws of 1941, chap. 266; *Matter of Tombini*, 177 Misc. 148; affd., 262 App. Div. 956), and further directing that within a specified number of days after such service the owner shall submit a statement showing the income produced and the taxes, interest and all other carrying charges paid during the six months preceding the day of such service and make available for inspection by the mortgagee, at a time and place designated, all records and data as to such income and disbursements. The time for submitting the statement and making the records available of course should be fixed at a time sufficiently long after the date of service of the order to show cause to give the owner a reasonable time after such service within which to comply with the direction, and the return date of the order to show cause should be fixed at a time sufficiently long after the time fixed for submitting the statement and making the records available to give the mortgagee a reasonable time to examine the records and prepare a counter-statement if desired.

In that way, the requirement that the application relate to " the six months prior to the application " is complied with, and, at the same time, the necessary examinations are had and the data for computing the surplus assembled before the matter comes on for hearing before the court, and I think it highly probable that in at least the vast majority of cases there will be no need for hearings as to the facts.

This application is accordingly denied, with leave to proceed as above indicated.